UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Dakota J.H., | Case No. 22-CV-247 (JWB/JFD) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kilolo Kijakazi, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Dakota J.H. seeks judicial review of a final decision by the Commissioner of Social Security denying his application for disability insurance benefits ("DIB"). (Soc. Sec. Admin. R. (hereinafter "R.") 23.)[1] Plaintiff is proceeding pro se. Plaintiff's impairments include multilevel degenerative disc disease, a right wrist sprain with an ulnar minus variance, seborrheic dermatitis, a history of substance use, use of medical marijuana, and adjustment disorder with depressed mood and anxiety. (R. 12–13.) The case is currently before the Court on the parties' cross-motions for summary judgment[2] (Dkt. Nos. 22, 25), which have been referred to the

---

[1] The social security administrative record is filed at Dkt. Nos. 17 and 17-1. The record is consecutively paginated, and the Court cites to that pagination rather than to the docket number and page.

[2] On December 1, 2022, the District of Minnesota amended Local Rule 7.2, which governs procedures in social security cases, to conform to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g). D. Minn. LR 7.2 advisory committee's note to 2022 amendment. The Supplemental Rules apply to actions filed on or after December 1, 2022. Because this case was filed before that date, the procedures established by the

1

undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1(a)(3)(D). Construing Plaintiff's pro se filings liberally, the Court finds that he is challenging (1) the weight the Administrative Law Judge ("ALJ") gave to a statement from Plaintiff's doctor and (2) the ALJ's determination that Plaintiff's impairments do not meet or medically equal the Social Security Administration's ("SSA") criteria for disability (known as listings). After reviewing the record, the Court recommends that the ALJ's decision be affirmed because it was supported by substantial evidence and contains no legal errors.

## I.   Background

Plaintiff's last insured date for DIB consideration is September 30, 2020. (R. 9.) To be eligible for DIB, Plaintiff's disability must have existed before the date he was last insured for disability insurance benefits. *See Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998). The SSA will not pay DIB for a disability that begins after a claimant's date last insured. The date of onset of Plaintiff's alleged disability is July 1, 2015 (R. 9, 382), meaning that the time period relevant to the Court's consideration is from July 1, 2015 to September 30, 2020.

### A.   Administrative Proceedings

The SSA denied both Plaintiff's initial claim for DIB (R. 227) and his claim on reconsideration (R. 233). Plaintiff appealed his denial to an ALJ, who held a hearing on January 28, 2020. (R. 33–65.) A second ALJ held a supplementary hearing on October 20,

---

previous version of Local Rule 7.2 apply, including a provision that the case be resolved on cross-motions for summary judgment. *See* D. Minn. LR 7.2(c) (2015).

2020 before rendering a decision. (R. 121–34.) The ALJ ended the second hearing early because Plaintiff was uncooperative (R. 134, 207) and, after reviewing the available documents, found that Plaintiff "was not under a disability within the meaning of the Social Security Act from July 1, 2015, through the date last insured" (R. 208).

Plaintiff appealed the ALJ's decision, claiming the ALJ violated his civil rights and discriminated against him in finding that he was not disabled. (R. 310–311.) The SSA Appeals Council reviewed the ALJ's decision and found that the ALJ did not abuse his discretion in handling Plaintiff's case but that the ALJ did err in determining Plaintiff's last insured date. (R. 224.) The ALJ found that Plaintiff had been last insured on June 30, 2020 but should have found that Plaintiff had been last insured on September 30, 2020. (*Id.*) Thus, the Council remanded the case for adjudication of the entire period at issue. (*Id.*) On April 29, 2021, an ALJ convened a hearing to consider the case on remand but again the hearing was ended early because Plaintiff was uncooperative. (R. 85–117.) The ALJ held a second hearing on May 18, 2021. (R. 116, 136–67.)

After reviewing the record, the ALJ concluded that Plaintiff was not disabled under the Social Security Act (R. 10.) Following the five-step sequential analysis outlined in 20 C.F.R. § 404.1520, which is used in social security disability determinations, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity between his alleged disability onset date of July 1, 2015 and September 30, 2020, the date he was last insured.

3

(R. 12.)[3] Since the ALJ found that Plaintiff was not involved in substantial gainful activity, the ALJ proceeded to step two of the analysis.

At step two, the ALJ found that Plaintiff's multilevel degenerative disc disease was a severe impairment, but that his other impairments were not severe. (R. 12.)[4] The ALJ also considered Plaintiff's mental impairment at step two, considering the four "paragraph B" functional areas that come into play when an ALJ evaluates a claim that a Plaintiff is disabled due to mental health issues. 20 C.F.R. § 404.1520a(b)(3) (explaining the four functional areas as "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself"). The ALJ found that Plaintiff had no limitations in the first, second, or fourth functional areas (R. 13–14) but found mild limitation in the third functional area, "concentrate, persist, or maintain pace" (R. 14). Since the impairment was mild, and because the ALJ found no additional evidence supporting a greater limitation, the ALJ found Plaintiff's mental impairment to be not severe. (R. 14–15 (citing 20 C.F.R. § 404.1520a(d)(1)).) The ALJ noted that because Plaintiff did not consent to releasing some of his mental health records, most of the

---

[3] If a claimant is capable of engaging in substantial gainful activity after the claimed date of onset of disability, the SSA will find the claimant is not disabled. 20 C.F.R. § 404.1520.

[4] The SSA considers an impairment not severe if "it does not significantly limit [a claimant's] ability to do basic work activities," such as walking, standing, seeing, hearing, speaking, remembering, using judgment, and responding appropriately to the work environment. 20 C.F.R. §§ 404.1520(c), 404.1522(a). In contrast, a severe impairment must significantly limit a claimant's ability to do these activities, and the impairment must last at minimum 12 months. 20 C.F.R. §§ 404.1522(a), 404.1509.

evidence came from the report of the consultative examiner, Monique Bourdeaux, Psy.D. (R. 15–16.)

Moving to step three, the ALJ consulted the listing for degenerative disc disease, Plaintiff's sole severe impairment. *See* 20 C.F.R. § 404.1520(d). Finding that the record did not show that Plaintiff met the criteria in the listing, the ALJ proceeded to determine Plaintiff's residual functional capacity[5] ("RFC") when he was last insured. (R. 17.); 20 C.F.R. § 404.1520(e). The ALJ concluded that Plaintiff had the capacity to do light work, including "occasionally exert 20 pounds of force and frequently 10 pounds, stand/walk 6 hours in an eight hour day, except frequent climbing of ramps/stairs, occasional climbing of ladders, ropes, and scaffolds, occasional balancing, stooping, kneeling, crouching, crawling . . . ." (R. 17.)

At step four, the ALJ found that Plaintiff could not continue his past relevant work given his new RFC. (R. 21–22); 20 C.F.R. § 404.1520(f). In coming to this conclusion, the ALJ considered the opinion of a vocational expert, Mr. Timothy Whitford. (R. 9, 22.) At the fifth and final step, the ALJ found that Plaintiff was not disabled from July 1, 2015 to September 30, 2020 after the vocational expert testified that there were jobs in the national economy that could accommodate a person with Plaintiff's age, education, work experience, and RFC, specifically jobs like "marker," "bench assembler," or "garment sorter." (R. 23); 20 C.F.R. § 404.1520(g).

---

[5] RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

On September 3, 2021, Plaintiff appealed the ALJ's ruling to the Appeals Council. (R. 379–380.) Plaintiff asked the Council to "take a reasonable look at my records and be able to [see] what I am experiencing on the daily." (R. 379.) He claimed that the SSA was discriminating against him because he had not served in the military, saying that his brother-in-law had "the exact same issues" but was a military veteran and was "approved in less than six months." (R. 380.) On November 16, 2021, the Appeals Council denied Plaintiff's request for review, stating that the ALJ did not abuse his discretion in finding Plaintiff not disabled and noting that it could not find any other reason to review the decision. (R. 1.)

  B.  **Judicial Review**

On January 27, 2022, Plaintiff filed a complaint seeking judicial review saying, "I've appealed 3 times for social security. Last time I appealed they didn't even review my case and denied me." (Compl. 3, Dkt. No. 1.) He went on to explain, "I've no choice but to take this to district court. My [d]octor, Daniel Smith, who has been working with me for several years has written a statement stating, 'I can't get gainful employment.' My conditions are ongoing and will last for the rest of my life." (*Id.* at 4.)

The Commissioner requested an extension of time to answer Plaintiff's complaint and to file the administrative record with the Court, and the Court granted the request for a 60-day extension on April 15, 2022. (Dkt. Nos. 10, 14.) Three days later, Plaintiff sent an ex parte email to the Court requesting that the order be vacated. (*See* Dkt. No. 15.) The Court did not vacate its order and the Commissioner filed an answer with the administrative record on May 4, 2022. (Dkt. Nos. 16, 17, 17-1.) Plaintiff did not file a motion for summary

6

judgment by the due date established under the previous version of Local Rule 7.2, and the Court sua sponte extended the deadline twice. (Dkt. Nos. 20, 21.) Plaintiff then filed a single-page motion for summary judgment, stating:

> I'm writing to request a motion for summary judgment in my case: 0:22-CV-00247-jfd. There's been no genuine dispute about key facts regarding my physical and mental state. In truth, I believe, the defense has failed to raise any genuine dispute of material facts,[6] because my physical and mental state is not going to improve and according to the "blue book"[7] these are qualifying conditions for social security disability.

(Dkt. No. 22.) In response, the Commissioner filed a motion for summary judgment accompanied by a memorandum of law which argued that Plaintiff waived his right to allege a claim of error because he did not challenge any of the ALJ's findings, cite to the record, or provide any legal analysis. (Def.'s Mem. Supp. Mot. Summ. J. 6 (citing *Vandenboom v. Barnhart,* 421 F.3d 745, 750 (8th Cir. 2005)), Dkt. No. 26.) The Commissioner also cited authority outside of the social security context for the proposition

---

[6] Plaintiff apparently refers to the Federal Rule of Civil Procedure 56 standard for summary judgment. That is not the applicable standard for judicial review of the Commissioner's final decision. The standard is whether the ALJ committed legal errors and whether their findings were supported by substantial evidence. *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018); *see also* 42 U.S.C. § 405(g) (establishing substantial evidence test). For cases filed before December 1, 2022, courts in the District of Minnesota apply this standard after receiving the parties' cross-motions for summary judgment, which are not filed pursuant to Rule 56, but pursuant to Local Rule 7.2. D. Minn. LR 7.2(c) (2015). In cases filed on or after December 1, 2022, courts apply the standard after receiving the parties' briefs and the plaintiff's optional reply. *See* D. Minn. LR 7.2(a); Suppl. R. Soc. Sec. Actions 1(a).

[7] The "blue book" is another name for the listings at 20 C.F.R. Part 404, Subpart P, Appendix 1. *See Disability Evaluation Under Social Security*, Social Security Administration, https://www.ssa.gov/disability/professionals/bluebook/ (last visited Jan. 4, 2023) ("We no longer publish Disability Evaluation Under Social Security in hardcopy because we publish updated versions of the Listing of Impairments electronically").

7

that "*pro se* litigants must brief arguments in order to preserve them." (*Id.* 6–7 (citing *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988)).) Before stating the standard of review and providing its analysis, the Court must explain what claims Plaintiff has properly raised.

### C.   Plaintiff's Claims

Courts construe documents filed pro se liberally. *Michael J.B. v. Soc. Sec. Admin.*, No. 19-CV-00839 (KMM), 2020 WL 1190993, at *1 (D. Minn. Jan. 29, 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), *R&R adopted sub nom. Michael J.B. v. Berryhill*, No. 19-CV-839 (ECT/KMM), 2020 WL 1187366 (D. Minn. Mar. 12, 2020); *see also Olsen v. Di Mase*, 24 F.4th 1197, 1202 (8th Cir. 2022) (holding pro se arguments are entitled to "liberal construction"); *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) ("[P]ro se complaints are to be construed liberally"). Nevertheless, "Plaintiff bears the burden of developing his arguments and directing the Court to evidence in the record to support" them. *Scott H. v. Saul*, No. 20-CV-847 (HB), 2021 WL 2379420, at *7 (D. Minn. June 10, 2021) (citing *Binion v. City of St. Paul*, 788 F. Supp. 2d 935, 950 (D. Minn. 2011) ("This Court does not function as a research assistant for the parties.")).

When construing a pro se motion for summary judgment in the social security appeals context, courts in this District try to discern a plaintiff's summary judgment arguments from their supporting memorandum (if any), their complaint, and sometimes the issues they raised before the SSA Appeals Council. *See A.S.A. v. Saul,* No. 20-CV-74 (ECW), 2021 WL 1062037, at *8–9 (D. Minn. Mar. 19, 2021) (finding plaintiff to have argued that the ALJ failed to account for mental diagnoses when assessing mental RFC,

where plaintiff had filed no briefing but his complaint alleged the ALJ's decision was not based on substantial evidence), *appeal dismissed*, No. 21-1949, 2021 WL 4959035 (8th Cir. Sept. 15, 2021); *Stadler v. Colvin*, No. 15-CV-2756 (LIB), 2016 WL 8200939, at *18 (D. Minn. Sept. 26, 2016) (identifying plaintiff's arguments by reviewing her memorandum of law together with her complaint); *Batta v. Astrue*, No. 11-CV-293 (SRN/LIB), 2012 WL 956512, at *10 (D. Minn. Jan. 31, 2012) ("Though she does not explicitly challenge any of the ALJ's conclusions, construing her pleadings liberally, the Court now on review will incorporate the issues she raised for review before the Appeals Council."), *R&R adopted*, No. 11-CV-293 (SRN/LIB), 2012 WL 956506 (D. Minn. Mar. 21, 2012).

Cognizant of its obligation to liberally construe pro se filings, and guided by the practice of this District, the Court reviewed Plaintiff's appeal to the Appeals Council (R. 379–381), his complaint (Compl. at 1–5, Dkt. No. 1), and his Motion for Summary Judgment (Dkt. No. 22). Reading these three documents together, the Court understands Plaintiff to be arguing that (1) the ALJ gave inadequate weight to the opinion of his treating doctor ("My [d]octor, David Smith . . . has written a statement . . . ." (Compl. 4)) and (2) the ALJ failed to realize that Plaintiff's conditions met or medically equaled the listings at step three of the analysis. (Pl.'s Mot. Summ. J. 1 ("according to the 'blue book' these are qualifying conditions for social security disability").)

II.     **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the ALJ's decision, 42

U.S.C. § 405(g), and whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

It is a claimant's burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

**III.   Analysis**

Plaintiff's request for judicial review, liberally construed, raises two arguments. Plaintiff argues that the ALJ did not give sufficient weight to Dr. Smith's reported statement that he is unable to work and that one or more of his impairments meet or medically equaled a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1.

**A.     The ALJ Did Not Err in Not Considering Dr. Smith's Reported Statement.**

In his complaint, Plaintiff argues that the ALJ failed to properly consider his treating physician's opinion. (*See* Compl. at 4 ("My [d]octor, Daniel Smith, who has been working with me for several years has written a statement stating, 'I can't get gainful employment.").) Plaintiff did not identify or cite any particular record from Dr. Smith containing this statement. Nevertheless, the Court reviewed the administrative record in this case—over 900 pages in length—and did not find such a statement from Dr. Smith. Even if Dr. Smith did make this statement, it would not have helped Plaintiff's case. An ALJ need not consider a medical source's statements on matters reserved to the Commissioner, such as whether a claimant is disabled or not able to work. 20 C.F.R. § 404.1520b(c)(3)(i). Section 404.1520b(c) describes such evidence as "inherently neither valuable nor persuasive" and excuses an ALJ from having to "provide any analysis about how [he or she] considered such evidence in [his or her] determination or decision, even under § 404.1520c," which discusses medical opinions and prior administrative medical findings. *Id.*

There is no question that the reported statement by Dr. Smith that Plaintiff "can't get gainful employment" is a statement about whether Plaintiff was able to work and therefore an issue reserved to the Commissioner under § 404.1520b(c). Consequently, the

11

ALJ did not have to analyze or even mention that statement. *See* 20 C.F.R. § 404.1520b(c)(3)(i). The Court recommends denying Plaintiff's motion for summary judgment on this theory and now turns to Plaintiff's allegation that he met the criteria for impairment under 20 CFR Part 404, Subpart P, Appendix 1 § 1.5 ("Listing 1.15").

### B. The ALJ Did Not Err in Finding That Plaintiff's Impairments Do Not Meet Listing 1.15.

Plaintiff argues that his conditions "are qualifying conditions for social security disability." (Pl.'s Mot. Summ. J. 1.) Just as in *Vandenboom v. Barnhart*, Plaintiff cites no case law and cites no specific facts that support his argument. 421 F.3d 745, 750 (8th Cir. 2005) ("We reject out of hand Vandenboom's conclusory assertion that the ALJ failed to consider whether he met listings 12.02 or 12.05C because Vandenboom provides no analysis of the relevant law or facts regarding these listings."). This Court similarly dismisses this conclusory assertion and recommends that Plaintiff's motion for summary judgment be dismissed on this theory.

Even if the Court were to entertain this argument, it would find that Plaintiff did not meet his burden by showing that he met all of the criteria in Listing 1.15. *See Schmitt v. Kijakazi*, 27 F.4th 1353, 1358–99 (8th Cir. 2022) ("The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing. To meet a listing, an impairment must meet all of the listing's specified criteria." (citing *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004))). At step two of his analysis, the ALJ found that Plaintiff has the severe impairment of multilevel degenerative disc disease. (R. 12.) At step three, the ALJ consulted Listing 1.15, which is the listing for that condition at 20 C.F.R.

Part 404, Supbart P, Appendix 1. (R. 17); 20 C.F.R. pt. 404, subpart P, app. 1, § 1.15 ("disorders of the skeletal spine resulting in compromise of a nerve root(s)"); *id.* § 1.00 F (explaining that the SSA considers degenerative disc disease a disorder "of the skeletal spine resulting in compromise of a nerve root(s)"). After reviewing Listing 1.15, the ALJ found that the record did "not document [a] disorder of the spine resulting in compromise of a nerve root," citing the findings he described later in his analysis. (R. 17.)

While the ALJ must consider all the evidence when evaluating whether a claimant meets a listing, they need not list all the evidence that they considered at step three. *Scott H. v. Saul*, No. 20-CV-847 (HB), 2021 WL 2379420, at *4–5, 7 (D. Minn. June 10, 2021) ("In fact, simply stating that the impairment does not equal a listing is generally sufficient."). This is because the ALJ's stated "reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide [a] rationale that is sufficient for a subsequent reviewer or court to determine" whether the individual met the criteria. SSR 17-2p, 2017 WL 3928306 (Mar. 17, 2017).

In this case, the ALJ's subsequent analysis is sufficient to determine that Plaintiff did not meet Listing 1.15. To meet this listing, an individual must present, among other things, "findings on imaging . . . consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine." 20 C.F.R. pt. 404, subpart P, app. 1, § 1.15(C). The ALJ noted that a 2018 MRI found "no high grade stenosis or compression of an exiting nerve root" in Plaintiff's cervical spine and that the radiologist thought the MRI "overall looked quite good." (R. 18, 695, 697.) Thus, substantial evidence supports the conclusion that

Plaintiff did not meet the listing because his imaging results did not show that his nerve roots were compromised.

Even if Plaintiff did have such imaging to present, he would still have failed to meet Listing 1.15 because he would not be able to satisfy one of the other required criteria. To meet Listing 1.15, a person must have:

> D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:
>
> 1. A documented medical need[8] (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or
> 2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), and a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or
> 3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

Plaintiff could not have met any of these three criteria. As to number one, the record contains no evidence that Plaintiff needed a walker, bilateral canes, bilateral crutches, or a qualifying wheelchair. Plaintiff did not report using any of these devices in his functional reports from 2018. (R. 455–56, 471–72.) Plaintiff also denied using a cane in a January

---

[8] The listings explain that an individual has a documented medical need when they have "evidence from a medical source that supports [their] medical need for an assistive device (see 1.00C2b) for a continuous period of at least 12 months (see 1.00C6a)." 20 C.F.R. 404, subpart p, app. 1, § 1.00C6a (2021).

14

2020 hearing before an ALJ. (R. 58.) Plaintiff reported using a cane (but not bilateral ones) to walk after a December 2020 encounter with police in which he kicked a steel door with his left foot. (R. 586.) An x-ray taken the same day as Plaintiff's report revealed no fractures, dislocation, or misalignment, and the soft tissues were unremarkable. (R. 865.) A January 2021 history of present illness gathered at physical therapy did not mention the foot injury or indicate Plaintiff used a cane to walk. (R. 870–72.) As to number two, the record contains no evidence that Plaintiff needed a "hand-held assistive device" or a "wheeled and seated mobility device." As to number three, there is no evidence in the record that suggests that Plaintiff is unable to use either of his arms to complete work-related activities. At the May 2021 hearing before the ALJ, Plaintiff described going grocery shopping but being limited in what he could carry in his right hand. (R. 154–57.) He estimated that he could carry only five or ten pounds before feeling sharp pain in his right hand. (R. 157.) In the same hearing, Plaintiff also reported picking up his child, who at the time weighed over 20 pounds, even though he found it painful. (R. 154.) These facts suggest that Plaintiff could use his arms to complete work-related activities, if with limitations. In sum, substantial evidence supports the ALJ's finding that, while Plaintiff may have been limited in his abilities, he was not so limited as to meet or medically equal the criteria explained in Listing 1.15.

**IV.   Recommendation**

The Court acknowledges that Plaintiff has had serious health conditions throughout his life and is sympathetic to the challenges he has faced. Nevertheless, because the ALJ's decisions, culminating in the conclusion that Plaintiff was not disabled, are supported by

substantial evidence in the record and are free from legal error, the Court recommends affirming the ALJ's decision.

Accordingly, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's Motion for Summary Judgment (Dkt. No. 22) be **DENIED**;

2. Defendant's Motion for Summary Judgment (Dkt. No. 25) be **GRANTED**;

3. The Commissioner's decision be **AFFIRMED**; and

4. **JUDGMENT BE ENTERED ACCORDINGLY**.


Date: January 9, 2023                                    *s/ John F. Docherty*
                                                        JOHN F. DOCHERTY
                                                        United States Magistrate Judge


**NOTICE**

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and therefore is not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to D. Minn. LR 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation within fourteen days. A party may respond to objections within fourteen days of being served a copy. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).